<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILBERTO ACANDA,<br><br>　　　　　　　　Appellant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | Civ. No. 09-2662 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

LANGTON & ALTER
by: Abraham S. Alter, Esq.
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ  07065

　　*Attorneys for Appellant,*

PAUL J. FISHMAN
United States Attorney for the District of New Jersey
by: Sandra M. Grossfeld
Special Assistant U.S. Attorney.
26 Federal Plaza, Room 3904
New York, NY, 10278
[City, State, Zip]

　　*Attorneys for Defendant.*


**<u>DEBEVOISE, Senior District Judge</u>**

Plaintiff, Gilberto Acanda, seeks review, pursuant to 42 U.S.C. 405(g) and 1383(c)(3), of the determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Disability Benefits under Title II and/or title XVI of the Social Security Act. Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his Step Three and Step Four analysis, rendering a decision unsustainable under the substantial evidence doctrine. Additionally, Plaintiff contends that the ALJ improperly rejected the testimony of the Vocational Expert ("VE") who has expert knowledge on the precise matters to which he was testifying. Because the Court finds that the ALJ's decision was supported by substantial evidence and that Plaintiff's assertions of error are without merit, the Commissioner's determination will be affirmed.

## I.  BACKGROUND

*i. Plaintiff's history and claims*

Plaintiff is a fifty-seven year-old native of Cuba, who came to the United States in 1980; he has attained three years of high school education in Cuba. (R. at 74, 291.)  Plaintiff does not speak or understand English. (R. at 77.) He was previously employed sweeping streets until January 2003, loading and unloading trucks in a factory between 1984 and 1995, and, most recently, in 2005, in a perfume factory putting sprayers into bottles of perfume. (R. at 303.) On August 9, 2004, Plaintiff filed a Title II application for a period of disability and Title XVI application for supplemental security income, in which the Plaintiff claimed disability because of herniated discs, water in the brain, vision, vision conditions, headaches, forgetfulness, and electrocution. (R. at 31.) On January 31, 2005 Plaintiff's claims were denied initially and on September 20, 2005, they were denied upon reconsideration; on November 3, 2005, plaintiff

filed a timely written request for hearing. (R. at 18.) Plaintiff was granted a hearing before an ALJ on January 31, 2007 in Newark, New Jersey. (R. at 280.)

In a written report, Plaintiff asserted he was able to dress, bathe, groom, and feed himself. (R. at 92.). He also indicated he prepared multiple course meals for himself (taking an hour to an hour and a half), did cleaning, laundry, and sometimes mowing (for two to three hours, two to three times a week). (R. at 93.). Plaintiff indicated he went out to shop and pay bills (accompanied by his wife) and could count change but could not write checks as a result of his inability to read or write English. (R. at 94.) In one part of the report, the Plaintiff indicated he got along with authority figures and had never been fired from a job because of problems getting along with people; however, he earlier noted problems getting along with others. (R. at 97, 96) He also noted taking Motrin since 1993 to relieve his pain. (R. at 85.)

*ii. Medical Evidence*

The medical evidence in the record is expansive; given the variety of Plaintiff's complaints and the alleged cumulative effect, the account of medical reports and evaluations will be comprehensive. In October 2004, Plaintiff's ophthalmologist, Dr. Adolphus Anosike, reported on the basis of Plaintiff's most recent evaluation that his best corrected visual acuity "at a distance" was twenty/twenty-five in his right eye and twenty/twenty in his left; "at near" both eyes were twenty/twenty, with correction. The visual fields were full and without abnormalities. (R. at 145.) Later, on July 14, 2005, Dr. Edgar Braunstein found Plaintiff's visual acuity was correctable to twenty/twenty in each eye and that visual fields were within normal limits. The doctor concluded, "[t]his patient has no specific eye complaints. He has good vision and he is capable of all visual functions." (R. at 204.).

On October 21, 2004, a consultative examiner, Dr. Joseph Buceta, having performed a psychiatric examination, reported that Plaintiff's speech was coherent and goal directed without flight of ideas. His mood and affect were mildly angry but he denied signs of delusions, suicidal or homicidal ideations, feelings of worthlessness or hopelessness, and there were no signs of psychomotor agitation or retardation. His long term memory was fairly good, but the doctor did note short term memory difficulties recalling three items after five minutes. However, Plaintiff was able to perform simple arithmetic, serial threes, and his knowledge was commensurate with his level of education. He could also identify similarities between objects, abstract from Spanish proverbs, and spell words forwards and backwards. (R. at 149.)  His social judgment and insight were adequate. (R. at 149-150.) The doctor assessed his global assessment of function ("GAF") to be sixty-five. (R. at 150.)

On October 28, 2004, Dr. Luis Vassallo performed a physical consultative examination in which Plaintiff could bend down to remove his shoes, stand up easily, walk on tiptoes and heels and squat completely. The doctor also noted that Plaintiff walked without a limp and sat comfortably during the interview. He had full range of motion of the lumbar spine (and an X-ray examination of the lumbosacral spine was normal (R. at 156.)) and, while sitting, was able to bring both lower extremities parallel to the floor without any back pain. The doctor concluded that the Plaintiff had chronic back pain without any neurological deficit and all the joints were within normal range of motion. (R. 152.)

On December 7, 2004, Dr. Ira Gash, a State agency non-examining medical consultant completed a Psychiatric Review Technique Form (PRTF) in which he noted that Plaintiff had an anxiety disorder not otherwise specified (NOS) and under the "B" Criteria of the Listings for Section III, Ration of Functional Limitations, found that Plaintiff had moderate difficulties in

maintaining concentration, persistence, and pace, and moderate restrictions of activities of daily living. (R. at 162, 167.) On August 9, 2005, Dr. Thomas Harding, also a State agency non-examining medical consultant, affirmed Dr. Gash's assessment. (R. at 170.)

On December 7, Dr. Gash also completed a mental residual functional capacity ("RFC") assessment which stated that Plaintiff blamed his dependence on family on his poor vision and found that the Plaintiff presented with adequate concentration and memory. He was found to be cooperative but with a mildly angry mood. He had no overt thought disorder, his speech was coherent and goal directed, and his social judgment was adequate. (R. at 173.)

In a report dated December 6, 2004, it is noted that complaints of severe pain and limitations due to back condition are not supported by the objective findings. (R. at 211.)

On August 22, 2005, Dr. Seung Park, a State agency non-examining medical consultant, indicated that Plaintiff complained of low back pain but noted that Plaintiff had a normal gait and was able to stand and walk on heels and toes. Cervical and lumbosacral spines had full forward flexion. There was also no evidence of significant neurological deficit. Based on the medical evidence, the doctor concluded the Plaintiff had no confirmed medically determined impairment. (R. at 213.).

On September 19, 2005, Dr. Carlos Jusino-Berrios completed a Medical Consultant's Review of Psychiatric Review Technique form and a Medical Consultant's Review of Mental Residual Functional Capacity Assessment in which he agreed with findings of the State Agency non-examining consultants in the PRTF and MRFC. Dr. Jusino-Berrios states that overall, the Plaintiff was able to understand, remember and execute simple instruction, able to maintain attention, sustain persistence and pace, adapt to changes, and interact with others. (R. at 215.)

5

A January 12, 2005 abdominal X-ray examination was negative but revealed early degenerative changes of the lumbar spine. (R. at 203.)

In February 2006, Plaintiff requested that Dr. Rastogi, Plaintiff's physician, complete papers for Social Security disability. Plaintiff reported to the doctor that he had back pain, since sustaining a fall in 1992, as well as poor vision. (R. at 222.) On examination, Plaintiff's back showed no tenderness, his straight leg raising test was negative, and he had a normal gait and posture. On February 8, Dr. Rastogi indicated in an examination report that the Plaintiff was capable of working full time and was not incapacitated. He also indicated the Plaintiff's orthopedic disability was categorized as Class II: Functional capacity adequate to conduct normal activities despite handicap, discomfort, or limited mobility of one or more joints. (R. at 246.).

However, in May 2006, Dr. Rastogi again examined the Plaintiff when he complained of memory problems; the doctor again found no back tenderness, normal gait and posture, and a negative straight leg test. (R. at 225) A magnetic resonance imaging scan (MRI) of the brain indicated generalized cortical atrophy (R. at 233) and an MRI of the lumbosacral spine showed spondylolisthesis Grade I of L-5 upon S-1, bulging of the annulus fibrosis at the L4- L5 level with circumferential bulging at L5-S1, and hypertrophic changes of the facet joints.  (R. at 234.) On May 17, 2006, Dr. Rastogi completed another WFNJ/Med-1 examination report in which he indicated that the Plaintiff was incapacitated to the extent he could not work full time (assessing the length of the disability to be between six and twelve months). (R. at 242.) He indicated that Plaintiff had lower back pain since 1992, which was stable. (R. at 241.) On May 17, the doctor classified Plaintiff's orthopedic disability as Class III: Functional capacity adequate to perform only little or none of the duties of usual occupation or of self care. In section K,

Psychiatric/Psychological Disability, of this report, Dr. Rastogi also indicated that Plaintiff had mental retardation with an IQ of less than 50 (there are no accompanying test results). (R. at 243).

On June 7, 2006, Dr. Angel Hernandez of the Mt. Carmel Guild performed a psychiatric evaluation which noted that Plaintiff was, cooperative, displayed normal psychomotor activity, spoke at a normal rate and volume, was coherent, relevant and goal-directed. His mood was dysphoric and affect irritable. The doctor also noted that his long term memory was intact and his short [term] memory was likely intact, recalling three out of three objects. His GAF was fifty-five to sixty. (R. at 253.).

*iii. Hearing before the ALJ*

On January 31, 2007, Plaintiff (with the help of an interpreter) and Rocco J. Meola, an impartial vocational expert ("VE"), appeared and testified before ALJ Joel H. Friedman. At the hearing, both parties agreed to amend the alleged onset date of plaintiff's disability from January 6, 2003 to January 1, 2005. (R. at 18.) The ALJ issued a decision finding Plaintiff was not disabled, which became final when the Appeals Council denied Plaintiff's request for review. (R. at 5.)

Plaintiff claimed he stopped working because of back pain, fluid in the brain, and pinched nerves in the eyes. (R. at 292.) In his testimony, he stated he could lift twenty-five or thirty pounds and could walk three or four blocks. (R. at 297). Upon questioning by his attorney, Plaintiff stated the most he could lift without pain was five or six pounds. (R. at 299.) He stated he could stand for one hour before needing to sit as a result of pain in his back. (R. at 297-298). Plaintiff also claimed he had vision problems causing him to be fired from a job and that he was depressed and suffered from memory problems. (R. at 300.).

A VE, Dr. Rocco Meola, testified at the hearing that Plaintiff had been a street sweeper whose work was medium and unskilled (his previous work loading and unloading trucks was also medium, unskilled work). The ALJ asked the VE to assume an individual of Plaintiff's age, (over fifty years old), limited education, lack of English, his past relevant work experience, and capable of performing exertional demands of medium work as defined in the regulations. The ALJ further asked the VE to factor into his response the non-extertional limitation that Plaintiff was limited to simple one to two-step jobs in a low contact, low stress setting. The ALJ then asked the VE whether Plaintiff would be able to perform any of the past relevant work that the VE had identified (street sweeper-maintenance-and loading and unloading trucks in a factory). The VE testified that "[i]n my opinion he would be able to do both of those jobs." (R. at 304.)

The ALJ then asked the VE, "[i]f the claimant had difficulty either due to, well, if he had difficulty with memory that interfered with one to two-step jobs, would he be able to do those jobs?" The VE answered "No." The ALJ then asked the VE "[i]n the alternative, if the . . . hypothetical person had difficulty maintaining attention and concentration with respect to simple, routine jobs, could he do any of the jobs that you identified?" The VE responded, "[w]ith that limitation he would not be able to do his past relevant work or any other work in the regional or national economy." (R. at 305.)

After considering the medical evidence and hearing the testimony, the ALJ issued a decision finding that the plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2005 through the date of the decision. (R. at 12-13.) The ALJ found that the Plaintiff had the residual functional capacity "to perform a range of medium work requiring simple 1-2 step routine jobs involving low social contact and low stress." (R. at 21.)

## II. DISCUSSION

Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), Plaintiff seeks reversal and benefits, or, in the alternative, reversal and remand of the Commissioner's decision denying Plaintiff disability insurance benefits (DIB) or eligibility for Supplemental Security Income (SSI). In support of his petition, Plaintiff contends the ALJ failed to fully consider the record and did not provide sufficient explanation for rejecting evidence. Specifically, he argues (i) that the ALJ failed at Step Three to consider the combination of Plaintiff's impairments, (ii) that at Step Four he did not provide an effective explanation for his arrival at his RFC assessment, and (iii) that he rejected the VE's testimony which, Plaintiff asserts, supported a finding of disability.

**A. Standard of Review**

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000). A district court's review of the Commissioner's factual findings, however, is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999) ( "A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently."). However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below. Substantial evidence consists of "more than a mere scintilla" of support for a determination. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

**B. Determination of Disability**

9

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity*. The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)( i ). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(i).

*Step 2: Severity of Impairment*. If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or does not meet the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(ii).

*Step 3: Listed Impairments*. If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

*Step 4: Past Relevant Work*. If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his or her "past relevant work," meaning the individual's prior job or a similar occupation. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his or her impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir.2000). If the ALJ finds that the individual has the capacity to perform past relevant work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(iv).

*Step 5: Adjustment to Other Work*. If the claimant cannot perform past relevant work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)( v ). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. 20

C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of performing gainful employment other than his past relevant work and that such jobs exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

**C. The Commissioner's Findings and Conclusions**

In this case, the ALJ applied the five step analysis and concluded at the first step that the Plaintiff had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date. (R. at 20.) At the second step, the ALJ found that the Plaintiff had the following severe impairments: depression and degenerative disc disease (R. at 21.)

*i. The ALJ's Conclusions at Step Three*

At the third step, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404 Appendix 1. (R. at 21.) However, the Plaintiff argues that the ALJ violated 20 C.F.R. §404.1523 by failing to consider the combined effect of his various impairments on his ability to work. Pl. Br. at 16.  The Court's inspection of the ALJ's decision reveals that argument to be without merit. As stated above, the ALJ specifically found that "[Plaintiff] does not have an impairment or *combination* of impairments that meets *or medically equals* one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I." (emphasis added) (R. at 21.) The ALJ compared the Plaintiff's impairments to the requirements of medical listing 1.04 and referenced evidence relied on elsewhere in the ALJ's opinion, that there was "no nerve root involvement" in

12

Plaintiff's back disorder. (R. at 23.) He also notes that Plaintiff's affective disorder "does not rise to the level of meeting medical Listing 12.04." (R. at 21.). Plaintiff argues that merely stating the Plaintiff does not meet the B criteria is insufficient, questioning who determines whether a limitation is moderate or marked. Pl. Br. at 15. However, the ALJ is reliant upon the evidence with which he is presented and as he has been presented with a report listing the Plaintiff's limitations as moderate that is the level of restriction he shall afford the criteria. These statements make clear that the ALJ considered the cumulative effect on Plaintiff's maladies as required by 20 C.F.R. § 404.1523.

*ii. The ALJ's Conclusions at Step Four*

At the fourth step, the ALJ found that the entire record supported a finding that Plaintiff had the residual functional capacity to perform a range of medium work requiring simple one to step routine jobs involving low social contact and low stress and that therefore Plaintiff was able to perform past relevant work. (R. at 21, 23.). In so concluding, the ALJ relied on an evaluation of the intensity, persistence, and functional limiting effects of the Plaintiff's symptoms using, in addition to the medical evidence, a seven part assessment of the credibility of Plaintiff's statements. (R. at 21-22.). From such an assessment, the ALJ determined the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R. at 22.)

Contrary to the Plaintiff's contention that "at Step Four the ALJ's conclusions are unexplained," Pl. Br. at 17, the ALJ did provide a "defensible, rational, evidentiary case," *id.* at 18, regarding the RFC. The Plaintiff argues that finding him capable of medium work "in the face of degenerative disc disease, is indefensible." Pl. Br. at 21. The Plaintiff complains that the ALJ's alleged, "careful consideration of the entire record" yielding a decision that Plaintiff can

13

carry out medium work, is not adequately supported by the record. Pl. Br. at 23. However, this statement of "careful consideration of the entire record" merely comes from the ALJ's point heading, which is amply supported with multiple paragraphs citing to the record and explaining his conclusion. (R. at 21-23.)

The ALJ acknowledged Plaintiff's testimony of his inability to lift more than five or six pounds, walk more than three or four blocks, or stand for more than an hour (R. at 23); he has not, therefore -as Plaintiff argues in his brief, Pl. Br. at 25-28 -failed to consider Plaintiff's subjective evidence of disability. He also recognizes that state agency medical consultants indicated a severe psychiatric impairment due to anxiety, resulting in some moderate functional limitations. However, he makes note of the discrepancies in the record, pointing out how examining and treatment evidence indicate less severe psychiatric symptoms than those found by the state agency medical consultants and how two "workfare" forms (completed by the same doctor, within the same year) indicate opposite conclusions regarding Plaintiff's disability.

The ALJ referred to numerous reports and records, making clear that those which indicate impairments (such as MRI findings of disc disease and cortical atrophy) are ultimately mitigated by those that indicate minimal to no physical impairments (Plaintiff being able to walk unaided, squat fully, and, despite limitations on prolonged standing and lifting, full range of motion in the lumbar spine and all joints) and adequate mental functioning (Plaintiff demonstrating some short term memory impairment—contradicted by another report—but having adequate cognitive functioning, social judgment, and insight). (R. at 23.).

There is ample evidence in support of the ALJ's finding that the Plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of his symptoms were not entirely credible. The record shows that Plaintiff alleges his back problems originated in 1992,

14

with his fall, yet he was able to work for approximately ten years subsequently. (R. at 222) Furthermore, a December 2004 report states there is no medical evidence to support Plaintiff's complaints of pain. (R. at 211.)

While there may be MRI findings indicating spondylolisthesis, bulging of the annulus fibrosis, and hypertrophic changes of the facet joints, this does no more than demonstrate the presence of a condition; it fails to demonstrate Plaintiff's inability to work. Far more indicative of his ability to work are reports testifying that Plaintiff has no back tenderness, normal gait and posture, and full range of motion in the spine. (R. at 225,152.) Further supporting the ALJ's conclusion is Plaintiff's own written testimony that he does laundry, prepares multiple course meals, and even mows the lawn. (R. at 93.)

Most supportive of the ALJ's finding of Plaintiff's dubious credibility is his repeated complaint of eyesight trouble. Plaintiff even attributes his dependence on his family to his poor eyesight. (R. at 173.) There is simply no evidence in the record to support a finding of impaired vision and one ophthalmologist's report states, "[t]his patient has no specific eye complaints. He has good vision and he is capable of all visual functions." (R. at 204.) Additionally, the treating physician's "workfare" report that finds Plaintiff disabled, which would generally be given deference, 20 C.F.R. §§404.1527, 416.927, is contradicted by his own previous report, (R. at 246,) and oddities within the form undermine its weight. On this form, Dr. Rastogi indicated that Plaintiff suffered from mental retardation with an IQ of below fifty. (R. at 243.) There are no test results attached to the report, as the form's instructions direct, and this finding is wholly uncorroborated by other medical evidence, in fact, contradicted by the October 21, 2004 report of a consultative examiner which found there "were no signs of psychomotor agitation or retardation." (R. at 149.)

Furthermore, with regard to the psychiatric RFC, the Court recognizes, as did the ALJ, that MRI results showed generalized cortical atrophy. (R. at 233.) However, as with the lower back MRI, this does not indicate the presence of debilitating symptoms. Though one report suggested Plaintiff had some impaired short term memory (R. at 149,) another noted that it was likely intact. (R. at 253.) The GAF that the Plaintiff refers to in his brief of fifty-five to sixty is lower than that of sixty-five reported by the consultative examiner, (R. at 149),and, while Plaintiff argues this GAF indicates the presence of "serious symptoms," (Pl. Br. at 29) according to Diagnostic and Statistical Manual of Mental Disorders a rating of fifty-one to sixty indicates varying frequency of "moderate" symptoms, while a rating of sixty-five denotes "mild" symptoms. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. text rev. 2000), available at http://www.psychiatryonline.com/resourceTOC.aspx?resourceID=1. The ALJ's assertion that Plaintiff's complaints lack credibility is amply supported by the record.

Furthermore, the ALJ did not reject the VE's testimony, Pl. Br. at 35, but interpreted it, as he believed appropriate, to comport with the state agency medical consultant's definition of "moderate." He notes that the VE testified that with moderate limitations in the areas noted by the state agency medical consultant on a Mental Residual Functional Capacity assessment form that a person could not perform the Plaintiff's past relevant work. However, he discounts this testimony because it is based on a definition of "moderate" as being able to perform a job at only 60 or 70 percent of what a person without limitations could perform, while there is no evidence the state agency medical consultant was defining the term as such. The ALJ notes that "[t]o define the word 'moderate' in this sense, would be to transform virtually all <u>severe</u> psychiatric

16

impairments to <u>listing level</u>, in that any claimant with a severe impairment would perforce be unable to work." (R. at 24.).

There is clear evidence to support the ALJ's reasoning that "moderate" indicates an affirmative ability and not, as the VE would have it, a negative effect. Pl. Br. at 36. In Dr. Gash's Mental Residual Functional Capacity Assessment, the doctor checked "moderately limited" for both "the ability to understand and remember detailed instructions" and "the ability to maintain attention and concentration for extended periods of time." (R. at 171.) According to the VE this would mean that the plaintiff was unable to satisfactorily perform these functions. However, in the doctor's summary he stated that the Plaintiff "presented with adequate concentration and memory." (R. at 173.) The summary indicates that a moderate limitation does not denote an inability to perform such functions

As Defendant notes in its brief, the RFC is determined not by the check blocks in specific areas in Section I of the assessment form ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." (emphasis removed) POMS DI 24510.06, available at https://secure.ssa.gov/poms.nsf/lnx/0424510060)**,** but rather by Section III, the Functional Capacity Assessment, which explains the "conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Deft's Br. at 25; See POMS DI 24510.06, available at https://secure.ssa.gov/poms.nsf/lnx/0424510060.

To the extent that Plaintiff argues that the ALJ's hypothetical was flawed because it did not take into account all of Plaintiff's impairments, the hypothetical did in fact take into account all of the impairments considered in the RFC. Also, it is precisely the VE's testimony in response

17

to the hypothetical, including the impairments from the RFC that the Plaintiff alleges the ALJ "rejected."

The ALJ asked the VE to consider an individual who could meet the exertional demands of medium, work, and had the non-exertional limitations of being limited to one to two-step jobs in low contact, low stress settings; difficulty with memory interfering with one to two-step jobs; and difficulty maintaining attention and concentration with respect to simple, routine jobs, with regard to whether or not such an individual could perform Plaintiff's past jobs. (R. at 304-305.)

The ALJ also presented the VE with a hypothetical testing whether an individual would be prevented from performing Plaintiff's previous job if vision, or another impairment, required him to avoid heights or dangerous machinery. (R. at 305.) In the hypothetical presented to the VE, the ALJ seemingly went beyond the RFC, which primarily stated "the claimant presented with adequate concentration and memory. Though described as having difficulty with concentration and coherency" the Plaintiff was found to be "cooperative but with a mildly angry mood . . . The [Plaintiff's] functional limitation are related to his physical allegations with his psychological symptoms secondary but not functionally limiting by themselves." (R. at 173.)

Plaintiff also contends that the ALJ ignored the VE's testimony that the Plaintiff's most recent job in a perfume factory was stressful, (R. at 315-316) which, Plaintiff argues, conflicts with the Plaintiff's RFC as limited to "low stress jobs." Pl. Br. at 40. However, a certain amount of stress is inherent in any job. By stating that the perfume job was stressful, the VE did not make any assertion as to the degree of stress involved, making it entirely possible that it would be compatible with a low stress job.

### III. CONCLUSION

The Court finds unpersuasive Plaintiff's contention that at Step Three the ALJ failed to consider Plaintiff's severe impairments in combination, that at Step Four the ALJ failed to set forth the evidence that supported his finding, and that the ALJ failed to include the psychiatric limitations in the hypotheticals submitted to the VE and in fact ignored the VE's evaluation of disability. For the foregoing reasons, the Commissioner's determination that Plaintiff was not disabled will be upheld.

The Court will enter an order implementing this opinion.


          **__s/ Dickinson R. Debevoise_____ _____**

          DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: May 27, 2010